*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH A. SILVERMAN, PC,

      Plaintiff/Counterdefendant,

v

LAWRENCE DAVID KORN,

      Defendant/Counterplaintiff/Third-
      Party Plaintiff-Appellant

and

ELIZABETH A. SILVERMAN,

      Third-Party Defendant-Appellee.

UNPUBLISHED
May 27, 2025
2:09 PM

No. 368417
Oakland Circuit Court
LC No. 2018-163097-CZ

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Elizabeth A. Silverman represented Lawrence David Korn in his divorce from Margaret Clarke. Following the divorce, Silverman's firm sued Korn for payment of legal fees. Korn filed a counterclaim and third-party complaint against Silverman for malpractice. The trial court granted Silverman's motion for summary disposition, dismissing Korn's malpractice claims. We affirm.

## I. BACKGROUND

An earlier opinion of this Court includes many of the background facts of this case. *Elizabeth A Silverman, PC v Korn*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2020 (Docket Nos. 349331 and 350830) (*Silverman I*).[1] Korn and Clarke married "as

---

[1] Our Michigan Supreme Court vacated this Court's holding regarding attorney fees, but its opinion did not affect the malpractice issue. *Elizabeth A Silverman, PC v Korn*, 507 Mich 892; 955 NW2d

-1-

part of what Korn describes as a 'business relationship.'" *Id*. at 2. The marriage allowed Korn to obtain health insurance through Clarke, and Clarke benefited from jointly filing taxes with Korn. *Id*. The couple intended to divorce after Korn obtained disability benefits. *Id*. Korn retained Silverman and her firm to represent him in his divorce, in which he alleged, among other claims, that he had a mental disability and that Clarke took financial advantage of him. *Id*. The trial court's order following a trial provided for a property distribution that included granting Korn the couple's Florida home and two horses. *Id*. Further, the trial court granted to Clarke her Michigan home. *Id*. The trial court did not find that Clarke had committed fraud and declined to order the treble damages that Korn requested. *Id*.

Silverman moved for relief from judgment on Korn's behalf, which the trial court denied. Korn asked the trial court to reconsider several of its findings. Specifically, Korn also argued that Clarke had misrepresented the value of the two horses and asked the trial court to amend its judgment to account for the lower value of the horses. The trial court denied Korn's motion.

Afterward, Silverman's firm sued Korn for breach of contract and for account stated on the basis of his failure to pay for work completed by Silverman and the firm. Korn filed a counterclaim against the firm and a third-party claim against Silverman for legal malpractice. In response to a motion for summary disposition by Silverman and the firm, Korn relied on testimony from attorney Charles Kronzek about the ways that Silverman's conduct fell below the standard of care. *Silverman I*, unpub op at 3. The trial court granted summary disposition to Silverman and the firm on all counts. *Id*.

Korn appealed, arguing that the trial court erred by granting summary disposition to the firm and Silverman on his legal malpractice claim, and a panel of this Court agreed. *Id*. This Court explained that the trial court did not view Korn's proffered evidence in a light most favorable to Korn as required by MCR 2.116(C)(10) and instructed the trial court to address each of Korn's legal-malpractice allegations individually, including to determine whether the attorney-judgment rule applied. *Id*. at 5, 7.

After this Court's remand, Korn filed a third amended third-party complaint and second amended countercomplaint. Korn specifically alleged in Count I that Silverman refused to depose Clarke prior to trial. In Count II, Korn alleged that Silverman improperly filed a quitclaim deed for the Michigan home. Korn alleged in Count III that Silverman failed to obtain an appraisal of the horses. In Count IV, Korn alleged that Silverman did not properly question Dr. Jay Inwald, a mental health professional who had been treating Korn, at trial. Korn alleged in Count V that Silverman failed to call Dr. Gerald Shiener, a mental-health professional who had been treating Korn, as a witness. Korn further alleged in Count VI that Silverman failed to file a motion to retrieve Korn's personal property from Clarke's residence and, in Count VII, that Silverman failed to establish that Korn's mental disability made him vulnerable to manipulation and that he was not

---

987 (2021). On remand from our Supreme Court, this Court affirmed the trial court's award of attorney fees to Silverman for representing herself and the firm in obtaining payment from Korn when the attorney-client contract provided that he would be responsible for attorney fees if the attorney had to commence litigation to collect outstanding payment. *Elizabeth A Silverman, PC v Korn*, 339 Mich App 384, 392; 984 NW2d 536 (2021).

"scamming" the trial court. In Count VIII, Korn alleged that Silverman failed to communicate with the appraiser of the Florida house or learn about applicable Florida law. Finally, in Count IX, Korn alleged that Silverman violated her duty and standard of care, repeating many of his previous allegations. Korn also alleged that Silverman failed to pursue an annulment.

Silverman moved to dismiss the case in April 2023 on the basis that Korn failed to comply with discovery. The trial court granted Silverman's motion in part, including dismissing Count VIII and striking Dr. Shiener as a proposed expert witness. Korn has not appealed this order.

In June 2023, Silverman moved for summary disposition under MCR 2.116(C)(10), arguing that most of Korn's claims failed under the attorney-judgment rule. Silverman relied, in part, on her deposition, in which she explained that she did not want to depose Clarke and "prepare her for the questions so that she could come up with better answers when we got in front of the judge." Before trial, Korn and Silverman had discussed her opinion about not deposing Clarke, and Korn "drafted very good questions," many of which Silverman used when questioning Clarke at trial. Silverman further explained that she thought that "Korn was the best person to testify as to the day-to-day occurrences and his trust of Miss Clarke, and the fact that she took advantage of him." Silverman argued in her motion that not calling Dr. Shiener was a tactical decision, because she did not think that he would help the divorce case, and the trial court had stricken Dr. Shiener as an expert witness in the malpractice case. Regarding Dr. Inwald, Silverman testified that she had a lengthy meeting with Dr. Inwald about his involvement with Korn.

Silverman also argued that Korn's claim about the horses failed under the attorney-judgment rule, she had elicited testimony from Clarke that the horses were only insured for a total of $30,000, and she had argued that the horses should be valued lower than their coverage limit. Silverman argued further that Korn failed to demonstrate any damages as to the quitclaim deed and personal property. Finally, Silverman argued that Korn could not have succeeded on a claim for annulment.

In response, Korn argued Silverman refused to pursue an annulment despite him telling her that Clarke had defrauded him. Further, the attorney-judgment rule did not shield Silverman from the malpractice claims when Silverman breached the standard of care. The only exhibits that Korn attached were this Court's previous opinion and an affidavit by Dr. Inwald.

Dr. Inwald explained that Korn suffered from depression and other psychological disorders that prevented him from practicing law. In Dr. Inwald's opinion, Korn was vulnerable to manipulation and exploitation, and Korn's substantial gifts to Clarke and her children were "the product of said personality disorders." Dr. Inwald stated that Silverman did not ask him about Korn's susceptibility to manipulation when they prepared his testimony. At trial, she did not ask him about Korn's vulnerability to manipulation. Clarke's attorney had asked Dr. Inwald on cross-examination about whether he had seen Clarke take advantage of Korn, and Dr. Inwald said that he had not witnessed such an example. Dr. Inwald had only met with Clarke on "a couple of occasions" and, had Silverman asked for more details on redirect examination, Dr. Inwald would have explained that he had had only limited contact with Clarke and "given Korn's vulnerabilities, Clarke's taking advantage of Korn could not be ruled out."

The trial court granted Silverman's motion, dismissing all of Korn's claims. The trial court found that Silverman was entitled to dismissal of Counts I, IV, V, and VII under the attorney-judgment rule. The trial court explained that Silverman had supported her motion with evidence that her actions were tactical decisions, but Korn had not supported his motion with evidence that Silverman breached the standard of care to raise a genuine issue of material fact. Further, the trial court noted that it would "not search the record for factual support for a party's claim."

Next, the trial court dismissed Counts II and VI because Korn did not address Silverman's argument that he had failed to demonstrate damages related to the quitclaim deed or his personal property. As to Count III, the trial court found that, in the divorce proceedings, Silverman argued that the horses should be valued for less than their purchase price and, in the malpractice case, Korn had not presented evidence that the horses would have been appraised at a lower value. The trial court also noted that it had previously dismissed Count VIII, related to appraisal of the Florida house. Finally, the trial court found that Silverman had demonstrated that Korn could not have obtained an annulment, and Korn had not, in response, raised a genuine issue of material fact as to Count IX.

Korn now appeals. Korn does not challenge the earlier dismissal of Count VIII.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2023). "Summary disposition is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (cleaned up). A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (20130 (cleaned up). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

A party claiming legal malpractice must demonstrate: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Coleman v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993). "In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship." *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). An attorney has the duty to exercise reasonable skill, care, discretion, and judgment when representing a client. *Estate of Mitchell v Dougherty*, 249 Mich App 668, 677; 644 NW2d 391 (2002). Because there was no dispute that Silverman and Korn entered into an attorney-client relationship, "the issue is not whether a duty existed, but rather the extent of that duty once invoked." *Simko*, 448 Mich at 656. An attorney has the duty to devise a strategy that is consistent with prevailing Michigan law, but does not have a duty to guarantee the most favorable possible outcome. *Id*. "[M]ere errors in judgment by a lawyer are generally not grounds for a

malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence." *Simko*, 448 Mich at 658.

In many legal malpractice cases, a plaintiff must prove two cases within a single proceeding, demonstrating that, but for the malpractice, the plaintiff would have been successful in the underlying action. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994). This "suit within a suit" concept does not always apply, however, although it may if "an attorney's negligence prevents the client from bringing a cause of action (such as where he allows the statute of limitations to run), where the attorney's failure to appear causes judgment to be entered against his client or where the attorney's negligence prevents an appeal from being perfected." *Coleman*, 443 Mich at 64.

In our previous opinion in this case, this Court explained that the trial court erred to the extent that it found that the "suit within a suit" concept strictly applied because the allegations of malpractice were not procedural or administrative in nature. *Silverman I*, unpub op at 5. Instead, when the "suit within a suit" concept did not apply, Korn still needed to demonstrate that "Silverman's alleged shortcomings were the proximate cause of any alleged damages." *Id*.

In Count I, Korn takes issue with Silverman's failure to depose Clarke. First, Silverman argues that we should not consider Kronzek's deposition testimony on the basis that Korn did not present it to the trial court. A litigant may not expand the record on appeal. *Magley v M & W Inc*, 325 Mich App 307, 322 n 8; 926 NW2d 1 (2018). Korn presented Kronzek's deposition as part of his response to Silverman's motion for summary disposition in 2019, and referred to Kronzek's opinion in response to Silverman's April 2023 motion to dismiss for failure to comply with discovery.

Korn did not, however, present Kronzek's testimony in his response to the at-issue motion for summary disposition, nor did Korn rely on Kronzek's opinion in his response, beyond including a quotation from this Court's previous opinion. Korn also did not raise the issue of Kronzek's opinion during the hearing on Silverman's motion. See *Kincaid v Cardwell*, 300 Mich App 513, 539-540; 834 NW2d 122 (2013). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). Notably, two different trial court judges decided the motions for summary disposition.

In *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009), this Court agreed "that there was evidence in the record that could have been used to establish a question of fact." The defendant in that case, however, failed to refer to relevant deposition testimony in response to the plaintiff's motion for summary disposition, and the plaintiff attached the deposition, but did not refer to it. *Id*. "The trial court was not obligated under MCR 2.116(G)(5) to 'scour the record to determine whether there exists a genuine issue of fact' to preclude summary disposition.'" *Id*. at 381 (cleaned up). Instead, the nonmoving party has "the obligation to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting MCR 2.116(G)(4)). "Had the trial court considered evidence contained in the record, but not cited by the parties, that evidence would be part of our review." *Id*. at 380 n 8.

Here, Korn did not rely on Kronzek's opinion in response to Silverman's motion at issue in this appeal, and the trial court specifically noted that it would "not search the record for factual support for a party's claim." Nor did Korn attempt to alleviate the deficiency in a motion for reconsideration. Accordingly, arguments and evidence that were not presented for the trial court's review related to the motion in this appeal, including Kronzek's opinion, are not properly before this Court to consider.

Silverman explained that she made the choice not to depose Clarke to avoid giving Clarke advance notice of the trial questions. Additionally, Silverman met with Korn before trial, and they discussed deposing Clarke. Silverman used many of the questions that Korn drafted for cross examining Clarke. Korn has not presented any evidence that Silverman's decision not to depose Clarke was anything other than a tactical decision "well founded in law." *Simko*, 448 Mich at 658, 660. Korn did not address in his response to Silverman's motion for summary disposition how he would have received a more favorable outcome in the divorce case had Silverman deposed Clarke. Therefore, the trial court did not err by dismissing this claim.

Korn claimed in Count II that Silverman improperly recorded a quitclaim deed for joint ownership of Clarke's Michigan home. The trial court found that Korn did not present any evidence of damages and that Korn failed to address the claim in response to Silverman's motion for summary disposition. On appeal, Korn argues that he claimed damages to his credit rating, supported by a tax lien on the Michigan property that he submitted in response to Silverman's 2019 motion for summary disposition. Korn did not submit this tax lien with his response to the present motion for summary disposition, although he argued in his response that he received a tax bill. Even considering that lien, however, Clarke was solely responsible for any liens on the property, according to the judgment of divorce. Accordingly, Korn did not demonstrate a genuine question of material fact about the existence of any damages, and the trial court properly dismissed this claim.

Silverman also argues that her decision to record the quitclaim deed is protected by the attorney-judgment rule because she believed that the home was part of the marital estate and having his name on it would benefit him, considering Clarke's name was on the Florida home. When "an attorney acts in good faith and in honest belief that [her] acts and omissions are well founded in law and are in the best interest of the client, the attorney is not answerable for mere errors in judgment." *Estate of Mitchell*, 249 Mich App at 396 (cleaned up). Therefore, the trial court properly dismissed this allegation.

In Count III, Korn alleged that Silverman failed to obtain appraisals of Korn's horses, hindering her ability to submit the correct value to the trial court. Silverman argued in the divorce proceedings that the horses should have been valued at less than the value of the insurance coverage. In this action, Silverman argues that her decision not to obtain an appraisal was protected by the attorney-judgment rule, and she could not be held responsible for the trial court's decision. Silverman has not argued, however, that not obtaining an appraisal was a tactical decision.

Nevertheless, Korn failed to demonstrate that any error by Silverman regarding the horses was a proximate cause of any damages. There is no indication that the trial court awarded Clarke something of equal value or that it balanced the value of the horses against other property that had

been awarded to Clarke, nor that Korn intended to sell the horses. Accordingly, the trial court properly granted summary disposition of this claim because Korn failed to present any evidence of damages.

Korn's allegations in Counts IV, V, and VII relate to his claims that Silverman failed to formulate a proper trial strategy to demonstrate to the trial court that his disability made him vulnerable to Clarke's manipulation and control. Specifically, in Count IV, Korn alleged that Silverman failed to question Dr. Inwald at trial regarding Korn's disability. The record demonstrates, however, that Silverman met with Dr. Inwald to prepare for trial and attempted to show through Korn's testimony how Clarke manipulated him. Although Dr. Inwald stated in his affidavit that he could have provided more information about Korn's vulnerabilities on redirect examination, this does not raise a genuine question of fact about Silverman's conduct. Instead, Silverman fashioned a "trial strategy consistent with the governing principles of law and reasonable professional judgment." *Simko*, 448 Mich at 661. That another attorney may have questioned Dr. Inwald differently does not raise a genuine question of fact to sustain Korn's claims here. Therefore, the trial court did not err by dismissing Count IV.

In Count V, Korn alleged that Silverman failed to call Dr. Shiener as a witness to testify about Korn's mental health and his susceptibility to manipulation. During this case, however, the trial court struck Dr. Shiener as an expert because Korn did not produce discovery as required. Korn did not appeal the trial court's decision. Accordingly, there is no record for this Court to review regarding Dr. Shiener's proposed testimony. The trial court instead noted that Korn had not presented evidence to raise a genuine issue of material fact about Silverman's tactical decisions and that it would not search the record for factual support of his claims. Even if Silverman "made an error of judgment in deciding not to call particular witnesses, and perhaps another attorney would have made a different decision," tactical decisions such as these are not grounds for legal-malpractice claims. *Simko*, 448 Mich at 660. Further, on the basis of the evidence before it, the trial court also did not err by dismissing Count VII, in which Korn alleged that Silverman failed to demonstrate, through Dr. Inwald and Dr. Shiener, Korn's disability and the extent to which Clarke took advantage of him.

Next, in Count VI, Korn alleged that Silverman failed to move the trial court regarding him retrieving personal property from Clarke's home. As with the quitclaim deed, Silverman argued in her motion to dismiss that Korn did not demonstrate that he suffered any damages. The trial court properly dismissed this claim when Korn failed to address it in his response to Silverman's motion for summary disposition.

Finally, in Count IX, Korn rehashes many of his claims, with the addition that Silverman refused to file for an annulment. Korn has not cited to any authority to support his claim that Silverman was negligent for failing to pursue an annulment. For instance, Korn fails to demonstrate that his situation was one in which an annulment could have been granted. Korn did not raise a genuine question of material fact on this issue, and the trial court did not err by dismissing it.

Korn also argues that the trial court dismissed the case without addressing various other claims. Silverman requested that the trial court dismiss the case in its entirety, arguing throughout her motion for summary disposition that Korn's claims were either barred by the attorney-

judgment rule or that Korn did not demonstrate damages. Relying on just Dr. Inwald's deposition, Korn did not raise a genuine issue of material fact about any of these issues. Moreover, Korn states on appeal that these various remaining allegations "are encompassed by some of the more general allegations of the Complaint."

The trial court addressed the properly pleaded counts in Korn's most recent counter-complaint. To the extent that Korn now argues for the first time on appeal that there are additional claims nested within Count IX, such haphazard allegations within unrelated counts do not meet this judiciary's pleading standards. See MCR 2.111. Even setting the pleading standards aside, the allegations found in Count IX are largely, if not wholly, duplicative of allegations found in Counts I through VIII, which the trial court properly addressed. The trial court properly found that Korn had not raised a genuine question of material fact and did not err by granting Silverman's motion and dismissing the case.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

-8-